**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| JOHN PARKER, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-239-WKW-PWG |
| ) | |
| WILLIAMS PLANT SERVICES, ) | |
| LLC, ) | |
| ) | |
|     Defendant. ) | |

## REPORT AND RECOMMENDATION

On January 13, 2016, Plaintiff John Parker filed a civil complaint in the Circuit Court of Houston County, Alabama. (Doc. 1-1). Plaintiff sues Williams Plant Services, LLC ("WPS"), seeking damages arising from his wrongful termination from WPS as well as WPS's failure to pay appropriate overtime and severance pay. In his complaint, Plaintiff asserts claims of breach of contract (Count One) and breach of implied covenant of good faith and dealing (Count Two).

On April 6, 2016, WPS removed this case to the United States District Court for the Middle District of Alabama. (Doc. 1). WPS asserts that removal is proper because Plaintiff's claim seeking overtime falls under federal question jurisdiction as it is governed by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. (Doc. 1 at p. 4). WPS asserts in the alternative that removal is proper as diversity

exists between the parties, and Plaintiff seeks damages in excess of $75,000.00. (Doc. 1 at pp. 5-7). Pursuant to Federal Rule of Civil Procedure 12(b)(6), WPS moves for the partial dismissal of Plaintiff's complaint. (Doc. 8).

The matter is before the undersigned pursuant to the order of reference dated April 13, 2016. (Doc. 6). *See also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jefferey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990). For the reasons discussed below, the Magistrate Judge **RECOMMENDS** that this action be **REMANDED** to the Court of Houston County, Alabama, due to lack of subject matter jurisdiction.

**II.   BACKGROUND**

From February of 1996 through February 23, 2015, Plaintiff worked for WPS in various positions. (Doc. 1-1 at ¶ 6). Effective May 31, 2011, WPS offered Plaintiff the position of General Superintendent at the Farley Nuclear Plant at a rate of $49.35 per hour plus time and one-half for hours worked over forty hours per week. (Doc. 1-1 at ¶ 7). Plaintiff states that: (1) he performed all the job duties and obligations required of him to the best of his ability; (2) between May 31, 2011, and the last day he worked for WPS, he often exceeded forty hours on a number of weeks but was not paid overtime at the rate of $74.02 as promised; and (3) he never received

any reprimands throughout his years of employment with WPS. (Doc. 1-1 at ¶¶ 8-10, 13-14).

On May 23, 2015, WPS terminated Plaintiff without cause. (Doc. 1-1 at ¶¶ 11-12). Upon his termination, Plaintiff was not paid his separation pay of one week per year of service over the course of his employment with WPS. (Doc. 1-1 at ¶ 15). Plaintiff further states that he was neither given any notice of his allegedly offending conduct nor provided a reasonable opportunity to cure his conduct before his termination. (Doc. 1-1 at ¶ 16).

Plaintiff asserts a breach of contract claim in Count One of the complaint. Plaintiff alleges that WPS breached his employment contract by: (1) terminating Plaintiff without good cause; (2) failing to pay Plaintiff the appropriate hourly overtime rate of pay when he exceeded forty hours per week; and (3) failing to pay Plaintiff upon his termination separation pay of one week per year of service over the course of his employment with WPS. (Doc. 1-1 at ¶¶ 16-19).

In Count Two, Plaintiff asserts that WPS "breached the implied covenant of good faith and fair dealing by accusing Plaintiff of misconduct as a pretext for denying Plaintiff his bargained for severance payment. (Doc. 1-1 at p. 24). According to Plaintiff, WPS had no grounds for making the accusation, which "was an arbitrary, unreasonable, oppressive, underhanded and deceitful tactic intended to

3

prevent Plaintiff from receiving the severance payment." (Doc. 1-1 at ¶¶ 26-27). Plaintiff further alleges that WPS often improperly invoked the "'good cause' provision in its employment contracts as a pretext for denying employees bargained for severance payment." (Doc. 1-1 at ¶ 28).

Pursuant to Rule 12(b)(6), WPS moves for the partial dismissal of Plaintiff's complaint. (Doc. 8). WPS contends that: (1) Plaintiff's claims based upon his termination cannot be maintained as he was an at-will employee who could be discharged by WPS with or without cause; and (2) "any claim for any relief other than any alleged overtime owed for hours worked prior to [Plaintiff's] discharge should be dismissed." (Doc. 8 at pp. 3-4).

In his response to the motion for partial dismissal, Plaintiff asserts that he has alleged sufficient facts to support the claims made in Counts One and Two. (Doc. 10 at 2-3). With respect to his breach of contract claim referencing overtime pay, Plaintiff contends that he "he has undoubtedly plead a plausible cause of action for breach of contract independent of any yet added FLSA action." (Doc. 10 at p. 4) (emphasis added). Plaintiff further contends that WPS's "arguments concerning the nature of the employment relationship between the [parties] are simply irrelevant at this early stage of the litigation process." (Doc. 10 at p. 4).

On May 24, 2016, the court directed Plaintiff to file either: (1) a motion to amend his complaint along with a proposed amended complaint adding a FLSA claim; or (2) a response expressly stating that Plaintiff does not seek to add such a FLSA claim. (Doc. 14 at p. 5). Plaintiff responded that he does not seek to add an FLSA claim in this case. (Doc. 15).

Because Plaintiff declined to add an FLSA claim, the court ordered WPS to show cause why this case should not be remanded to the Houston County circuit court based on this Court's lack of subject matter jurisdiction. (Doc. 16). WPS reiterates in its response that this court retains subject matter jurisdiction over this matter due to diversity of citizenship and the fact the amount in controversy exceeds $75,000.00. (Doc. 17 at pp. 2-4). While acknowledging that the parties are diverse, Plaintiff contends in his reply that WPS's cannot meet its burden to establish that the amount in controversy exceeds $75,000.00. (Doc. 18 at p. 3). Plaintiff, therefore, seeks to remand this action back to state court. (Doc. 18 at p. 3).

## II.   DISCUSSION

### A.   General Legal Principles

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). A federal district court is "'empowered to hear

only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Therefore, a federal court is obligated to inquire into subject matter jurisdiction "at the earliest possible stage in the proceedings." *Id.* at 410. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

In its response to the court's show cause order, WPS acknowledges that the question of federal question jurisdiction "may now be mooted by Plaintiff's indication that he will not seek an FLSA claim." (Doc. 17 at p. 2). WPS otherwise presents no argument to establish federal question jurisdiction in this case. Thus, in order for the court to have subject matter jurisdiction over this action, diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) must be present.

When the purported statutory basis for federal jurisdiction is § 1332(a)(1)—a civil action satisfying the amount-in-controversy requirement and between "citizens of different States"—there must be "complete diversity of citizenship. That is, diversity jurisdiction does not exist unless each defendant is a citizen of a different

6

State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Furthermore, "[d]iversity jurisdiction exists where ... the amount in controversy exceeds the statutorily prescribed amount, in this case, $75,000." *Griffith v. Wal-Mart Stores East, L.P.*, 884 F. Supp. 2d 1218, 1222 (N.D. Ala. 2012) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). Removal jurisdiction requires both complete diversity and satisfaction of the requisite amount in controversy. A case does not become removable until both conditions are present.

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). A removing defendant must establish the propriety of removal under 28 U.S.C. §§ 1441, 1446 and, therefore, must demonstrate the existence of federal jurisdiction. *See, e.g., Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("the burden of establishing removal jurisdiction rests with the defendant seeking removal"); *City of Vestavia Hills v. Gen. Fidelity Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction.").

The procedural propriety of removal is often intertwined with the substantive question of the existence of subject matter jurisdiction. Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court. *Burns*, 31 F.3d at 1095.

**B.     Amount in Controversy**

When a case is removed—that is, which provision of 28 U.S.C. § 1446(b) ((b)(1) or (b)(3)) a removing defendant invokes—also governs the burden of proof as to amount in controversy. *See, e.g., Jones v. Novartis Pharms. Co.*, 952 F. Supp. 2d 1277, 1281–82 (N.D. Ala. 2013) ("The removal procedure statute contemplates two ways that a case may be removed based on diversity jurisdiction. The first way (formerly referred to as 'first paragraph removals')[, and accomplished pursuant to 28 U.S.C. § 1446(b)(1),] involves civil cases where the jurisdictional grounds for removal are apparent on the face of the initial pleadings. The second way (formerly referred to as 'second paragraph removals') contemplates removal where the jurisdictional grounds later become apparent through the defendant's receipt of 'an amended pleading, motion, order or other paper from which it may first be ascertained

that the case is one which is or has become removable.'" (quoting 28 U.S.C. § 1446(b)(3) (footnote omitted)).[1]

In the notice of removal, WPS contends that the lawsuit at issue is removable generally pursuant to § 1446(b), but does not specify whether this is a (b)(1) or a (b)(3) removal. (Doc. 1 at p. 2). That distinction is normally apparent upon the facts pled in a notice of removal, which should clearly designate whether the removing party construed the initial pleading as being removable on its face, and therefore a (b)(1) removal, or if there is (b)(3) "other paper" received from Plaintiff that caused the jurisdictional amount to become apparent. Because the notice of removal was timely filed within thirty days from the date WPS was served with a copy of the original state court complaint,[2] this case is a first paragraph, or a § 1446(b)(1), removal. *See Sallee v. Ford Motor Co.*, No. 2:13-cv-806-WKW, 2014 WL 1492874, at *3 (M.D. Ala. Apr. 16, 2014) (explaining when the clock begins to run for the thirty day periods implicated by § 1441(b)).

---

[1] As noted in *Jones,* the distinction between "first paragraph" and "second paragraph" removals is rendered obsolete by a clearer version of the removal statute, as amended by the *Federal Courts Jurisdiction and Venue Clarification Act of 2011*, PL 112–63, December 7, 2011, 125 Stat. 758, which added subsections to 28 U.S.C. § 1446(b). The substance of the removal procedure is not affected by the stylistic changes to the statute; therefore, the previous case law discussing "first paragraph" and "second paragraph" removals is still applicable despite its outdated terminology.

[2] WPS was served with a copy of Plaintiff's original complaint on March 7, 2016. (Doc. 1-2 at p. 25). WPS subsequently filed his removal on April 6, 2016. (Doc. 1).

If a defendant removes to federal court pursuant to § 1446(b)(1), then that party generally must demonstrate federal jurisdiction by a "preponderance of the evidence," whether or not that evidence is received from the plaintiff. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753–54 (11th Cir. 2010); *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010). *Pretka* reminds district courts that "the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section ... because the first paragraph of § 1446(b) does not 'restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal[' ... and] 'the use of deduction, inference, or other extrapolation of the amount in controversy is [not] impermissible[.]'" *Wilson v. Chester Bross Const. Co.*, No. CA 11-0020-KD-C, 2011 WL 1380052, at *12 (S.D. Ala. Apr. 12, 2011) (relying on and quoting *Pretka*, 603 F.3d at 753, 771). Under § 1446(b)(1), therefore, any evidence proffered by WPS is properly considered in addition to the allegations contained in the state court complaint.

In applying the "preponderance of the evidence" standard, the Eleventh Circuit in *Roe* explained that district courts are permitted:

> to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a complaint is removable. Put simply, a district court need not suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount.

10

> Instead courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

*Roe*, 613 F.3d at 1061-62 (citations and quotations omitted). District courts may also "rely on evidence put forth by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014). This court has previously considered the Eleventh Circuit's holding in *Roe*, concluding that:

> Although *Roe* recognizes that "judicial experience and common sense" may support "reasonable inferences" drawn "from the pleadings" to determine whether "the case stated in [the] complaint meets federal jurisdictional requirements," nothing in *Roe* permits the court to indulge in speculation or fill empty gaps in a plaintiff's factual averments with unfounded assumptions about what the evidence may show. 613 F.3d at 1061.
>
> "Judicial experience and common sense" are useless for making "reasonable" deductions, inferences, and extrapolations when the complaint is devoid of any averments from which to deduce, infer, or extrapolate. A reasonable inference "is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Arrington v. State Farm Ins. Co.*, No. 2:14–cv–209–CSC, 2014 WL 2961104, at *6 (M.D. Ala. July 1, 2014) (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)). "[W]ithout facts or specific allegations, the amount in controversy" can be determined "only through speculation—and that is impermissible." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753–54 (11th Cir. 2010) (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1209 (11th Cir. 2007)).

11

*Perkins v. Merion Realty Servs.*, LLC, No. 2:14-CV-1171-WKW, 2015 WL 998198, at *3-4 (M.D. Ala. Mar. 6, 2015).

Plaintiff seeks unspecified damages in his complaint "in such amount as determined by the trier of fact." (Doc. 1-1 at p. 4). According to WPS, however, Plaintiff seeks damages in excess of the jurisdictional threshold amount of $75,000.00 based on a review of the allegations contained in Plaintiff's complaint. (Doc. 17 at p. 2). WPS argues as follows:

> Plaintiff alleges he is owed separation pay of one week's pay for each of 18 years' service. At his stated pay of $49.35 per hour, this would total approximately $36,000 with a standard workweek of 40 hours, more if overtime is allegedly for that week. Additionally, Plaintiff alleges he was not paid overtime from May 31, 2011, until his last day of work, February 23, 2015. He further alleges he is owed such overtime at the rate of $74.02 per hour. While Plaintiff does not identify how much overtime he allegedly worked, if he seeks only three hours a week in overtime, those requested damages would total approximately $40,000. Thus, in total, Plaintiff seeks more than $75,000 in damages.

(Doc. 17 at pp. 2-3 (citations to record omitted)).

Plaintiff responds that WPS has failed to meet its burden that the amount in controversy exceeds $75,000. (Doc. 18 at pp. 2-3). Plaintiff contends that: (1) WPS "has not produced any evidence in this case to establish that the amount in controversy exceeds $75,000.00"; and (2) WPS's "calculation as to the amount in controversy is rather speculative at this point." (Doc. 18 at p. 3).

12

WPS's contentions in support of removal boils down to little more than an invitation for the court to use its "judicial experience and common sense" to divine that the availability of damages is an amount in excess of $75,000.00 in controversy. While it is legally possible that Plaintiff could recover more than the jurisdictional amount, WPS's burden in sustaining removal jurisdiction is much heavier. WPS must show that it is more likely than not that at least $75,000 is truly in controversy, and it has not met that burden as discussed below.

As referenced by WPS, Plaintiff alleges in his complaint that WPS failed to pay him "separation of pay of one week per year of service over the course of nearly 18 years of service." (Doc. 1-1 at ¶ 18). Plaintiff, however, provides no additional allegations detailing the calculation of separation pay owed to him. According to the complaint, Plaintiff was paid $49.35 per hour only during his last four years of employment. WPS speculates that Plaintiff would be entitled to separation pay at a rate of $49.35 per hour spanning all eighteen years of employment. WPS has presented no evidence to show that Plaintiff's separation pay should be calculated in such a manner. In the absence of specific allegations or evidence regarding the precise methodology used to calculate Plaintiff's separation pay, the court cannot reasonably infer without engaging in speculation what the total amount of Plaintiff's separation pay would be. *See Pretka*, 608 F.3d at 753–54.

Furthermore, WPS engages in more speculation when estimating the total amount of damages associated with Plaintiff's overtime claim. Plaintiff does not specify in his complaint the amounts of overtime he allegedly worked from May 31, 2011, through February 23, 2015. Without any factual basis, WPS simply guesses that Plaintiff's requested damages is based on him working an average of three hours of overtime per week during the alleged period of time. The court, therefore, cannot reasonably infer that Plaintiff's requested damages as to overtime pay would total an amount close to $40,000. *See Pretka*, 608 F.3d at 753–54.

In sum, the allegations set forth in Plaintiff's complaint provide an insufficient guide to establish that it is more likely than not that the amount in controversy exceeds $75,000.00. Because WPS has failed to satisfy its burden to demonstrate that the amount in controversy likely exceeds the jurisdictional minimum, removal of this action was inappropriate. Accordingly, this case is due to be remanded for lack of subject matter jurisdiction.

### III.  CONCLUSION AND RECOMMENDATION

Accordingly, the Magistrate Judge **RECOMMENDS** that this case is due to be **REMANDED** to the Circuit Court of Houston, County, Alabama, for lack of subject matter jurisdiction at the time of removal. Because this court lacks subject matter jurisdiction, the court should decline to enter any ruling on WPS's motion for

partial dismissal (Doc. 8), and that motion should remain pending for adjudication by the state court.

It is **ORDERED** that the parties shall file any objections to this Recommendation on or before **July 13, 2016.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 29th day of June, 2016.

                                              /s/ Paul W. Greene
                                              United States Magistrate Judge